**No. 2023-2302, -2303**

# United States Court of Appeals
# for the Federal Circuit

IN RE: STRONGBRIDGE DUBLIN LTD.,

*Appellant*,

*Appeals from the United States Patent and Trademark Office,*
*Patent Trial and Appeal Board in Reexamination Nos. 17/151,405 and 17/675,660*

## STRONGBRIDGE'S REPLY BRIEF

Deborah A. Sterling
William H. Milliken
Kristina Caggiano Kelly
Anna G. Phillips
STERNE KESSLER GOLDSTEIN & FOX
1101 K Street, NW
Floor 10
Washington, DC 20005
(202) 371-2600

*Counsel for Appellant Strongbridge Dublin Ltd.*

March 20, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 23-2302, -2303

**Short Case Caption** In re: Strongbridge Dublin Ltd.

**Filing Party/Entity** Strongbridge Dublin Ltd.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 3/20/2024

Signature:   /s/ William H. Milliken

Name:   William H. Milliken

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Strongbridge Dublin Ltd. | | Xeris Biopharmaceuticals, Inc. |
| | | Xeris Biopharma Holdings, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**FORM 9. Certificate of Interest**

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑     None/Not Applicable        ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable        ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................3

I.    The Board incorrectly construed the "avoiding" step. ....................................3

    A.    The Director's forfeiture argument is meritless. ...................................3

    B.    "Avoiding" concomitant administration of specific drugs requires affirmative activity. ...................................................5

II.    Under any claim construction, Sansone does not inherently anticipate the claims. ...................................................9

    A.    Sansone undisputedly does not anticipate under Strongbridge's claim construction. ...................................................9

    B.    Sansone does not anticipate even under the Board's unreasonably broad construction. ...................................................9

        1.    The Board failed to establish that the high standard for inherent disclosure was met. ...............................10

        2.    The Director's contrary arguments fail....................................11

            a.    The Director's repeated contentions that some of the Sansone patients probably were not taking methotrexate or famotidine are factually unsupported and legally insufficient. ...........................11

            b.    The Director improperly blurs the standards for anticipation and obviousness. ........................................15

            c.    *Novartis* and *Pernix* compel reversal, and the Director's attempts to distinguish those cases fail. ........17

    CONCLUSION ...................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abtox, Inc. v. Exitron Corp.*,
   131 F.3d 1009 (Fed. Cir. 1997) ............................................................................3

*Almirall, LLC v. Amneal Pharmaceuticals LLC*,
   28 F.4th 265 (Fed. Cir. 2022) ...................................................................16, 17

*Connell v. Sears, Roebuck & Co.*,
   722 F.2d 1542 (Fed. Cir. 1983) ........................................................................16

*Cont'l Can Co. USA v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991) .............................................................2, 9, 10, 13

*Coolit Sys., Inc. v. Vidal*,
   No. 2022-1221, 2024 WL 981364 (Fed. Cir. Mar. 7, 2024) ................................6

*In re Google Technology Holdings LLC*,
   980 F.3d 858 (Fed. Cir. 2020) .............................................................................5

*Int'l Bus. Machs. Corp. v. Iancu*,
   759 F. App'x 1002 (Fed. Cir. 2019) ......................................................2, 15, 20

*King Pharmaceuticals, Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010) ...........................................................................8

*Maxell, Ltd. v. Amperex Tech. Ltd.*,
   --- F.4th ----, 2024 WL 948880 (Fed. Cir. Mar. 6, 2024)...................................7

*Medytox, Inc. v. Galderma S.A.*,
   71 F.4th 990 (Fed. Cir. 2023) ..............................................................................4

*Novartis Pharm. Corp. v. Accord Healthcare, Inc.*,
   38 F.4th 1013 (Fed. Cir. 2022) .............................................................1, 2, 10, 17

*In re NTP, Inc.*,
   654 F.3d 1279 (Fed. Cir. 2011) ........................................................................16

*In re Oelrich*,
   666 F.2d 578 (C.C.P.A. 1981) ....................................................................10, 12

*Paul Hartmann AG v. Attends Healthcare Prod., Inc.*,
No. 2022-1724, 2024 WL 911880 (Fed. Cir. Mar. 4, 2024) .............................11

*Pernix Ir. Pain DAC v. Alvogen Malta Operations Ltd.*,
323 F. Supp. 3d 566 (D. Del. Aug. 24, 2018)................................................17, 19

*Pernix Ireland Pain Ltd. v. Actavis Laboratories FL, Inc.*,
2017 WL 3314005 (D. Del. Aug. 3, 2017)..................................................passim

*Person Pharm. LLC v. Alvogen Malta Operations Ltd.*,
945 F.3d 1184 (Fed. Cir. 2019) ...........................................................................12

*Sec'y, U.S. Dep't of Labor v. Preston*,
873 F.3d 877 (11th Cir. 2017) .......................................................................4, 13

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
683 F.3d 1356 (Fed. Cir. 2012) .............................................................................4

## INTRODUCTION

The opening page of the Director's brief says everything needed to decide this case. The Director acknowledges (at 1) that Strongbridge's claims require "treating periodic paralysis by administering dichlorphenamide to a patient while also 'avoiding concomitant administration' of either famotidine or methotrexate." The Director further acknowledges (at 1) that Sansone—the reference the Board found to anticipate those claims—"is silent as to whether" any of the Sansone patients were or were not "also taking famotidine or methotrexate while being treated" with diclorphenamide for periodic paralysis. And the Director does not attempt to argue that co-administration of famotidine or methotrexate would have "always" been "necessarily excluded" for the Sansone patients, *Novartis Pharm. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1018 (Fed. Cir. 2022). The best the Director can say (at 1) is that famotidine and methotrexate were *probably* not administered to the Sansone patients because those drugs "are administered to a different class of patients (for a different indication in need of different treatment) than those administered dichlorphenamide." *See also* PTO Br. 17 (admitting there is "no evidence" regarding whether the patients in Sansone received famotidine or methotrexate).

Given these admissions, Sansone cannot inherently anticipate the claims as a matter of law. When a reference is "silent regarding a negative limitation,

1

testimony from a skilled artisan as to possibilities or probabilities that the recited element would be excluded [does] not suffice" to show inherent anticipation. *Novartis*, 38 F.4th at 1017 (citing *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991)). Possibilities and probabilities are all the Director can muster here.

The case for reversal is particularly plain under the correct claim construction. If the "avoiding" step is properly construed to require actual affirmative avoidance, there can be no dispute that Sansone does not anticipate. But even assuming that the Board's construction—which would encompass any patient who just so happens to not take methotrexate or famotidine while receiving dichlorphenamide—is reasonable, the Board's analysis still cannot stand. Because of Sansone's silence regarding methotrexate and famotidine, we "simply [can]not tell one way or the other whether" the Sansone patients received those drugs, *Int'l Bus. Machs. Corp. v. Iancu*, 759 F. App'x 1002, 1011 (Fed. Cir. 2019); *see* PTO Br. 29 (admitting that there is "no evidence" regarding whether or not the Sansone patients were taking methotrexate or famotidine). "[S]ilence in that sense" is not enough for inherent anticipation. *Int'l Bus. Machs.*, 759 F. App'x at 1011; *see Cont'l Can*, 948 F.2d at 1268–69. The Board's conclusion otherwise is contrary to this Court's precedent. And the Director's attempts to defend the Board's decision likewise misconstrue the law of inherent anticipation. This Court should reverse.

2

# ARGUMENT

## I.    THE BOARD INCORRECTLY CONSTRUED THE "AVOIDING" STEP.

### A.    The Director's forfeiture argument is meritless.

This Court should reject the Director's attempt to avoid the merits of the claim-construction issue. Strongbridge preserved its arguments on the "avoiding" step in both cases.

As the Director acknowledges (at 19), Strongbridge explicitly argued in the '660 case that "avoiding" is a "separate method step that must be performed by the physician." Appx601–602. Strongbridge made this argument in the '405 case as well (albeit in slightly different words), noting that Sansone's silence on "the active step of avoiding administering an OAT1 substrate, e.g., famotidine, to a patient being administered dichlorphenamide)" was insufficient to anticipate. Appx272; *accord* Appx321. In any event, it would be "improper" to construe the "avoiding" step "differently in one [application] than another, given their common ancestry." *Abtox, Inc. v. Exitron Corp.*, 131 F.3d 1009, 1010 (Fed. Cir. 1997). The construction of this term, moreover, was a primary focus of the consolidated oral hearing. Strongbridge's counsel explicitly and repeatedly explained in response to the Board's questions that "avoiding" was an affirmative step that would require, for example, the physician to discontinue methotrexate or famotidine before administering dichlorphenamide or actively withhold methotrexate or famotidine from a patient taking dichlorphenamide. Appx429–430; Appx434–438. Taken

together, this was more than sufficient to preserve the argument. *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1360 n.3 (Fed. Cir. 2012) (party that "presented the essence of its present arguments" to the lower tribunal preserved those arguments for appeal).

The Director's contention (at 19) that Strongbridge did not present its construction of the "avoiding" step to the Board is simply incorrect, as the preceding discussion shows. (Indeed, the Director's own statement (at 20) that the Board "rejected Strongbridge's attempt to import unrecited limitations into the claims" belies the forfeiture contention: the Board could not have "rejected" an argument that Strongbridge did not present to it.) And, to the extent the Director is suggesting that Strongbridge cannot cite additional evidence in support of that construction—like dictionary definitions of "avoid"—on appeal, the Director has the law wrong. The forfeiture doctrine prevents parties from offering *new claim constructions* on appeal. It does not prevent them from offering additional *arguments* in support of a construction already advanced. *See Medytox, Inc. v. Galderma S.A.*, 71 F.4th 990, 997 (Fed. Cir. 2023) (collecting cases); *cf. Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017) ("Parties can most assuredly waive positions and issues on appeal, but not individual arguments—let alone authorities…. Were the rule otherwise, we could never

expect the quality and depth of argument to improve on appeal—an unfortunate result.").

*In re Google Technology Holdings LLC*, 980 F.3d 858 (Fed. Cir. 2020) (cited at PTO Br. 19) is inapposite. There Google tried to advance constructions for two terms—"cost" and "network penalty"—that it "never presented … to the Board." *Id.* at 863. Not so here. As explained above, Strongbridge argued in both its papers and at the oral hearing that the "avoiding" step is a separate active step that the physician must perform, rather than merely a requirement that the patient happen to not take methotrexate or famotidine while being administered dichlorphenamide. Appx272; Appx321; Appx429–430; Appx434–438; Appx601–602. That is the same position Strongbridge is advancing on appeal. There was no forfeiture.

**B.    "Avoiding" concomitant administration of specific drugs requires affirmative activity.**

As Strongbridge has explained (Op. Br. 20–27), the plain language of the phrase "avoiding concomitant administration" of methotrexate or famotidine when treating a patient with dichlorphenamide connotes affirmative activity: "either discontinuing methotrexate or famotidine if the patient is on those drugs or withholding them if the patient is not." *Id.* at 21. The phrase is not so broad as to encompass a patient who—by sheer happenstance—is not taking methotrexate or famotidine at the time dichlorphenamide is administered.

5

The Director does not engage with Strongbridge's arguments about the plain meaning of the word "avoid." Indeed, the Director appears reluctant to defend the Board's actual construction, protesting (at 22) that "[t]he Board did not … construe the claims to encompass 'a patient who merely happens not to encounter a contraindicated drug.'" But the preceding sentence of the Director's brief shows that this is exactly how the Board construed the claims: "to mean that the patient is not taking those drugs during the same time period or treatment regimen that the patient is being administered dichlorphenamide." *Id.*

Those contrary arguments the Director does advance lack merit.

As an initial matter, the Director mischaracterizes Strongbridge's claim construction. *See, e.g.*, PTO Br. 18, 20, 23. The claim does not necessarily require, for example, that "the doctor stop[] the treatment of famotidine for a patient in need thereof before administering dichlorphenamide," *id.* at 20. That is one *example* of "avoiding" concomitant administration—but the claim is not limited to that example. *Cf. Coolit Sys., Inc. v. Vidal*, No. 2022-1221, 2024 WL 981364, at *5 (Fed. Cir. Mar. 7, 2024) (Board "misapprehend[ed]" the patent owner's claim construction of "matingly engaged" where the Board believed the patent owner was arguing that the term "requires a Lego®-like connection," when in fact the patent owner was simply "referring to a specific example of components that were matingly engaged"). So Strongbridge is not "import[ing] unrecited limitations into

6

the claims," *contra* PTO Br. 20. Strongbridge's construction—unlike the
Board's—simply gives meaning to the word "avoid."

*Second*, the Director's reliance (at 21) on Strongbridge's withdrawn
amendment in the '405 case is a non sequitur. The amendment added a limitation
requiring that the patient be "in need of treatment with famotidine" before
diclorphenamide is administered. Appx269. The withdrawal of the amendment,
then, meant that the patient need not require treatment with famotidine at the time
dichlorphenamide is first administered for the claim to be satisfied. But the fact
remains that, to practice this method, one must actually avoid administration of
famotidine (not just have one's patient not take famotidine by happenstance).[1] That
the claim could have been drafted even more narrowly does not excuse the Board's
unreasonably broad construction of the claim as it stands now. *Cf. Maxell, Ltd. v.
Amperex Tech. Ltd.*, --- F.4th ----, 2024 WL 948880, at *3 (Fed. Cir. Mar. 6, 2024)

---

[1] The Director's suggestion that the withdrawn amendment imparts the same
meaning as Strongbridge's current claim construction is refuted by the following
example: if a doctor prescribed dichlorphenamide to a PPP patient *not* in need of
famotidine and instructed the patient to avoid famotidine while taking
dichlorphenamide, and then the patient later developed heartburn but declined to
take famotidine because of the doctor's warning, the pending claim would be
satisfied. But the claim as modified by the withdrawn amendment would not be
satisfied, because the patient was not in need of treatment with famotidine before
the dichlorphenamide was first administered.

("That there were other ways of drafting the claim does not render the claim language contradictory or indefinite.").

*Third*, although the Director concedes (at 23 n.3) that the Board's labeling of the "avoiding" element as an unpatentable "mental step" is not supported by the authority the Board cited, *see also* Op. Br. 25–26, the Director attempts to backfill that analysis by citing *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010). But that case is inapposite. *King Pharmaceuticals* stands for the proposition that "an otherwise anticipated method claim" cannot become patentable simply by adding "a step of 'informing' someone about the existence of an inherent property of that method." *Id.* at 1278. There is no "informing" step in these claims (about an inherent property or otherwise). Instead, the physician must actively avoid concomitant administration of the two drugs. That step is nowhere found in the prior art, because no one knew before Strongbridge's work that there was any reason for concern with co-administering dichlorphenamide and OAT-1 substrates.

*Finally*, the Director's attempt (at 23) to distinguish *Pernix Ireland Pain Ltd. v. Actavis Laboratories FL, Inc.*, 2017 WL 3314005 (D. Del. Aug. 3, 2017), makes no sense. The "disputed term" here—"avoiding concomitant administration"—is "actually recited in the claim," *contra* PTO Br. 23, just as it was in *Pernix*. And Strongbridge's point is that this phrase—like the phrase "starting dose is not

adjusted relative to a patient without hepatic impairment" found in the claim in *Pernix*—is an active step that the physician must perform and that the prior art does not teach. The Director has no answer to Strongbridge's actual argument.

## II. UNDER ANY CLAIM CONSTRUCTION, SANSONE DOES NOT INHERENTLY ANTICIPATE THE CLAIMS.

### A. Sansone undisputedly does not anticipate under Strongbridge's claim construction.

The Director tacitly concedes that, if the claims are construed to require actual avoidance (as opposed to merely requiring that the patient not take methotrexate or famotidine while dichlorphenamide is administered), Sansone cannot anticipate. Since Sansone "is silent as to whether any of [its] patients are also taking famotidine or methotrexate while being treated," PTO Br. 1, it necessarily does not disclose that administration of those drugs was actively avoided. Accordingly, if the Court agrees with Strongbridge's claim construction, the Court can and should reverse on that basis alone.

### B. Sansone does not anticipate even under the Board's unreasonably broad construction.

The Board's analysis remains flawed even under the Board's claim construction. The standard for inherent anticipation is exacting: the missing element must *necessarily* be present—100% of the time—in the prior art. *Cont'l Can*, 948 F.2d at 1268. It is not sufficient that the missing element was possibly, or

even probably, in the art. *Id.* at 1269 (citing *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981)). That standard is not satisfied here.

### 1.    The Board failed to establish that the high standard for inherent disclosure was met.

The Board's inherency analysis contains three errors, each independently sufficient to justify reversal. *First*, the Board incorrectly concluded that Sansone's silence on the avoiding step—without more—was sufficient to inherently anticipate the "avoiding" step. This Court's precedent holds otherwise. Op. Br. 30–38; *see Novartis*, 38 F.4th at 1017–18. *Second*, the Board erroneously conflated the evidentiary burden applied during patent examination (preponderance of the evidence) with the legal standard for inherent anticipation (necessarily present) and thereby reasoned that, because some Sansone patients *probably* were not taking methotrexate or famotidine, the Examiner had satisfied his burden to show inherent anticipation. That analysis flatly contradicts *Continental Can* and its progeny. Op. Br. 38–41. *Third*, even assuming that the Examiner made a prima facie showing of inherent anticipation (he did not), the Board erred in concluding that the showing was not rebutted. Sansone expressly discloses that its patients were required to avoid certain drugs, none of which is methotrexate or famotidine—meaning that Sansone's silence as to the latter two drugs would indicate to skilled artisans that they were *not* necessarily avoided. *Id.* at 41–43.

### 2.    The Director's contrary arguments fail.

#### a.    The Director's repeated contentions that some of the Sansone patients probably were not taking methotrexate or famotidine are factually unsupported and legally insufficient.

Much of the Director's defense of the Board's decision boils down to a contention that, in all likelihood, some of the Sansone patients did not receive methotrexate or famotidine while they were taking dichlorphenamide. For example, the Director asserts that "an ordinarily skilled artisan *would not have expected* co-administration of dichlorphenamide and these drugs, or that all of the patients in Sansone were taking dichlorphenamide concomitantly with famotidine or methotrexate." PTO Br. 25 (emphasis added); *see also id.* at 26 ("[A] skilled artisan *would not expect* them to be co-administered to treat periodic paralysis.") (emphasis added); *id.* at 6 (similar). Elsewhere, the Director says that "the Examiner had *no reason to believe* that all of the patients in the study needed famotidine or methotrexate treatment." Br. 29 (emphasis added); *see also id.* at 10 (similar). These arguments fail for two reasons—one factual and one legal.

The factual problem is that the Director's speculation about probability lacks any support. The Board and the Examiner cited no evidence for their speculation that some of the Sansone patients probably did not receive the drugs. It was simply an assumption. And a mere "assumption regarding the characteristics of the [prior art] does not satisfy the high 'necessarily so' standard for inherency." *Paul*

*Hartmann AG v. Attends Healthcare Prod., Inc.*, No. 2022-1724, 2024 WL 911880, at *3 (Fed. Cir. Mar. 4, 2024) (rejecting inherency finding where "[t]he Board did not explain or otherwise identify any support to show why the nonwovens in the [prior art] would necessarily have [certain] characteristics and would thus, necessarily provide the [claimed] difference in retaining forces") (citing *Persion Pharm. LLC v. Alvogen Malta Operations Ltd.*, 945 F.3d 1184, 1191 (Fed. Cir. 2019)).

The Board's assumption, moreover, was ill-founded in light of Sansone's exclusion criteria. Those criteria list specific drugs that the Sansone patients were not permitted to take but say nothing about methotrexate or famotidine. In other words, the PTO's inherency analysis is inconsistent with Sansone's *express* disclosure. *Cf. Oelrich*, 666 F.2d at 581–82 (reversing inherent anticipation rejection of claim requiring a carrier frequency that *less* than resonant frequency because the prior art in question expressly stated it operated with a carrier frequency *greater* than resonant frequency).[2]

---

[2] The Director's assertion (at 30) that Strongbridge forfeited reliance on Sansone's exclusion criteria in the '405 case is incorrect. Strongbridge (and the Board) repeatedly invoked the exclusion criteria in connection with both applications at the consolidated oral hearing. *See* Appx417–418; Appx421; Appx431–432; Appx433; Appx439; Appx440. Strongbridge had not cited the exclusion criteria in the '405 case prior to the Board proceedings because it had not needed to: the Examiner's rejections of claim 16 of the '405 application did not

The Director protests (e.g., at 24–25) that it was reasonable for the Board to infer that Sansone's patients necessarily avoided co-administration because methotrexate and famotidine "are not used to treat periodic paralysis." *See also* PTO Br. 1, 11, 12, 14, 20, 26. But just because those drugs do not treat PPP does not mean, as matter of logic, that Sansone's patients were not taking them for some other reason. As the Examiner himself observed, "[i]t is well known that patients can suffer from more than one disease." *E.g.*, Appx616.

Moreover, even accepting for argument's sake that a skilled artisan might have "expected" that some Sansone patients happened not to be taking methotrexate or famotidine, that is insufficient to show inherency. Therein lies the legal problem with the Director's argument: as explained above, inherency cannot be established by probabilities or possibilities. *Cont'l Can*, 948 F.2d at 1268–69. It is established only by *certainty*.

---

actually rely on a theory of inherency, so it was sufficient for Strongbridge to point out that Sansone's silence on the "avoiding" step could not be express disclosure. *Compare, e.g.*, Appx565 (rejection in '660 application relying on inherency), *with* Appx241–242 (rejection in '405 application not relying on inherency). It was only in the proceedings before the Board that the PTO's theory morphed into inherent anticipation, thus making the exclusion criteria relevant.

In any event, forfeiture applies to *issues*, not *evidence*. *See supra* Section I.A (citing, e.g., *Preston*, 873 F.3d at 883 n.5). Strongbridge indisputably argued below that Sansone did not anticipate claim 16 of the '405 application because it did not disclose the "avoiding" step. Accordingly, even if Strongbridge had not raised the exclusion criteria in connection with the '405 case (which it did), Strongbridge would be permitted to rely on this evidence in support of that argument on appeal.

This misunderstanding of the law is perhaps best illustrated by the following sentence: "The Board explained that a preponderance of the evidence had to support the Examiner's findings that at least one patient did not take both drugs, i.e., that at least one patient necessarily avoided co-administration of famotidine or methotrexate, while taking dichlorphenamide." Br. 28. The first and second parts of that sentence—the clauses joined by "i.e."—are not equivalent. Even assuming that at least one patient *probably* did not take both drugs, that does not mean, as a matter of law, that at least one patient *necessarily* did not take both drugs. This is exactly the sort of "probabilities or possibilities" reasoning foreclosed by this Court's caselaw. *See also* PTO Br. 28–29 (incorrectly asserting that, if "the preponderance of the evidence establishes that at least one patient was not being treated with famotidine or methotrexate," that "means that the avoiding limitation was necessarily met by Sansone").

The effect of the Director's erroneous analysis, in the end, is to turn the legal test for inherent anticipation on its head. The Director argues (at 29–30) that Strongbridge's claims are not allowable because "Strongbridge failed to demonstrate that all the patients in Sansone were administered famotidine or methotrexate concomitantly with dichlorphenamide." Elsewhere, the Director faults Strongbridge (at 17) for failing to introduce "evidence that a patient needing—let alone receiving—famotidine or methotrexate treatment was included

14

in the Sansone trial." But Strongbridge was not required to show that the Sansone patients were necessarily taking methotrexate or famotidine. The Examiner had to show that they necessarily were not. *See Int'l Bus. Machs.*, 759 F. App'x at 1011 (patentee need not prove the absence of a negative limitation in the prior art to avoid a finding of inherent anticipation). The Examiner did not make that showing here—indeed, he did not even try.

The Director says (at 29) that, if the Board's "determination had been based on an express disclosure that a single patient did not take famotidine or methotrexate while taking dichlorphenamide, then there would not [be a] debate that a preponderance of the evidence supported anticipation" under the Board's construction. Indeed. But that is a critical distinction. The point of the inherency doctrine is to impose a heightened standard when the prior art does *not* expressly disclose a given limitation. If an allegedly anticipating reference does not expressly disclose a given limitation, it must meet the "necessarily present" standard. That standard was not satisfied here.

> **b.** **The Director improperly blurs the standards for anticipation and obviousness.**

The Director's extensive reliance on the purported knowledge of a person of ordinary skill in the art regarding the uses of methotrexate and famotidine is flawed for a second, independent reason: it is more akin to an obviousness analysis than an anticipation one. Specifically, the Director's attempt (at 24–25) to augment the

anticipation inquiry with a freewheeling reliance on "the knowledge in the art" is contrary to this Court's precedent. "Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983). A "disclosure that 'almost' meets that standard may render the claim invalid under § 103," but "it does not 'anticipate.'" *Id.* (rejecting the proposition that "it is sufficient for an anticipation 'if the general aspects are the same and the differences in minor matters is only such as would suggest itself to one of ordinary skill in the art'"); *see also In re NTP, Inc.*, 654 F.3d 1279, 1302 (Fed. Cir. 2011) (rejecting the PTO's argument that a prior-art reference disclosing an "equivalent" to a claim limitation was anticipatory and noting that such an argument would be proper only in the context of an obviousness rejection).

The Director points out (at 26) that "there may be circumstances where silence alone may be sufficient to support a negative limitation." That is true: if the context of the prior-art reference itself demonstrates that the reference necessarily lacks the feature excluded by the negative limitation, silence can be sufficient. For example, in *Almirall, LLC v. Amneal Pharmaceuticals LLC*, 28 F.4th 265 (Fed. Cir. 2022), this Court found claims to a drug composition that did "not comprise adapalene" obvious over a reference that "disclose[d] a complete formulation" and thus implicitly "exclude[ed] the possibility of an additional active ingredient"

16

(even though it did not mention adapalene). *Id.* at 273. Here, however, there is no context in Sansone (or any other evidence proffered by the Examiner) suggesting that patients necessarily avoided taking methotrexate or famotidine while take dichlorphenamide. If anything, the context indicates otherwise: Sansone excludes patients taking certain drugs, but *not* methotrexate or famotidine, from its study.

### c.    *Novartis* and *Pernix* compel reversal, and the Director's attempts to distinguish those cases fail.

This Court's written-description analysis in *Novartis*—which relied on principles of inherent anticipation—demonstrates the error in the Board's analysis. Just as the silence regarding a loading dose of fingolimod did not anticipate or provide § 112 support for a limitation requiring the absence of a loading dose in *Novartis*, 38 F.4th at 1017–18, Sansone's silence regarding avoidance of co-administering dichlorphenamide and methotrexate or famotidine cannot anticipate the "avoiding" limitation here. *See* Op. Br. 33–34. Judge Bryson's opinion in *Pernix* provides a similarly compelling analogy: the Devane study's silence regarding the treatment of patients with hepatic impairment did not anticipate limitations requiring administration of hydrocodone to patients with hepatic impairment or limitations requiring administration of an unadjusted dose of hydrocodone to such patients. *Pernix Ir. Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566, 590–91, 594 (D. Del. Aug. 24, 2018). The same

conclusion applies here: Sansone's silence is not inherent disclosure of the "avoiding" limitation. Op. Br. 35–37.

The Director's attempts to distinguish *Novartis* and *Pernix* are self-contradictory. The Director says (at 26) that *Novartis* is not on point "because the drug there was commonly used with a loading dose," whereas "dichlorphenamide and OAT1 substrates are used to treat different disorders." Then the Director says (at 27) that *Pernix* is distinguishable because the two patient populations in question were "unrelated." But the purportedly "unrelated" nature of PPP, on one hand, and conditions treatable with methotrexate and famotidine, on the other hand, was the precise basis the Director provided for distinguishing *Novartis*—so that cannot possibly be a distinction between this case and *Pernix*.

The purported distinction with *Novartis* makes no difference, as Strongbridge has explained. Op. Br. 34–35. Whether the patient populations in question are "related" goes, at most, to the *probability* that the Sansone patients were taking methotrexate or famotidine. *See also supra* Section II.B.2. It does not go to necessity. But, even taken at face value, the Director's distinction simply confirms that *Pernix* is on all fours with this case. Just as a disclosure of patients taking hydrocodone after bunionectomy surgery did not inherently anticipate the administration of hydrocodone to patients with the unrelated condition of hepatic impairment in *Pernix*, a disclosure of PPP patients taking dichlorphenamide does

not inherently anticipate avoiding concomitant administration of dichorphenamide with two drugs used to treat unrelated conditions in this case.

The Director also misunderstands the facts of *Pernix*. The claim there did not "requir[e] administration of hydrocodone to treat hepatic impairment," *contra* PTO Br. 27. The hydrocodone was administered to treat pain. *Pernix*, 323 F. Supp. 3d at 576. The point of the claim was to reflect the inventors' discovery that one could administer an extended-release formulation of hydrocodone to treat pain in patients who *also* had hepatic impairment without adjusting the dose. *See id.* at 574–77. This was in contrast to the prior art, which suggested dose adjustments of opioids like hydrocodone *would* be required for a patient with hepatic impairment. *See id.* And the court concluded that Devane's study of the use of extended-release hydrocodone to treat pain did not anticipate those claims because Devane said nothing about whether the study included patients with hepatic impairment or whether the dose was adjusted for such patients. *Id.* at 594. In other words, Devane's silence inherently disclosed neither the positive limitation requiring administration of hydrocodone to hepatically impaired patients nor the negative limitation requiring that the dose of hydrocodone not be adjusted for those patients. That reasoning applies with equal force to Sansone: Sansone's silence about methotrexate and famotidine does not inherently disclose avoiding those two drugs while taking dichlorphenamide.

In the end, the Director's own description of *Pernix* demonstrates its applicability here. There, the Director acknowledges (at 27), the court found no inherent anticipation because "there was no evidence that those treated in the prior art with hydrocodone following foot surgery had hepatic impairment because the two patient populations are unrelated." Here, there is no evidence that the patients treated with diclorphenamide in Sansone were not also taking famotidine or methotrextate. We simply do not know one way or another—particularly since, as the Director points out (at 26), "there is no relationship between the drugs." Sansone thus does not anticipate. *See Int'l Bus. Machs.*, 759 F. App'x at 1011.

## CONCLUSION

The Court should reverse the Board's decision and remand with instructions that claims 13 and 16 are in condition for allowance.

March 20, 2024                           Respectfully submitted,

                                        */s/ William H. Milliken*
                                        Deborah A. Sterling
                                        William H. Milliken
                                        Kristina Caggiano Kelly
                                        Anna G. Phillips
                                        Sterne Kessler Goldstein & Fox
                                        1101 K Street, NW
                                        Floor 10
                                        Washington, DC 20005
                                        (202) 371-2600

                                        *Counsel for Appellant Strongbridge
                                        Dublin Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 23-2302, -2303

**Short Case Caption:** In re: Strongbridge Dublin Ltd.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes  4,287  words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 03/20/2024

Signature: /s/ William H. Milliken

Name: William H. Milliken